UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

Nº 07-CV-01862-(JFB)
_____

TONY HUDGINS,

Petitioner,

VERSUS

PEOPLE OF THE STATE OF NEW YORK,

Respondent.

_____

**MEMORANDUM AND ORDER**
June 18, 2009
_____

JOSEPH F. BIANCO, District Judge.

Tony Hudgins (hereinafter "petitioner" or "Hudgins") petitions this court for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, challenging his conviction in County Court of Suffolk County, State of New York (the "trial court"). Hudgins was convicted of Second Degree Murder and First Degree Robbery. Following a jury trial, Hudgins was sentenced to an indeterminate term of twenty years to life imprisonment for his conviction of Second Degree Murder and a determinate term of twenty years imprisonment for First Degree Robbery, to be served concurrently.

Hudgins challenges his conviction, claiming his constitutional rights were violated due to (1) prosecutorial misconduct, (2) insufficient evidence to support his conviction, (3) ineffective assistance of counsel, and (4) an excessive sentence.

For the foregoing reasons, the petitioner's request for a writ of habeas corpus is denied in its entirety.

I. BACKGROUND

A. Overview

The Court has adduced the following facts from the instant petition and underlying record.

The petitioner was charged with one count each of Felony Murder in the Second Degree under N.Y. C.P.L. § 125.25(03) and Robbery in the First Degree under N.Y. C.P.L. § 160.15(4). Following a jury trial, a judgment of conviction was entered against petitioner on December 18, 2001, in County Court of Suffolk County, on both counts.

B. The Prosecution's Case at Trial

The prosecution's evidence at trial consisted of testimony from two eyewitnesses, a medical examiner, a fingerprint specialist and the arresting officers, including petitioner's confession, as well as evidence recovered from petitioner's home and his girlfriend's car. A summary of that evidence is contained below.

1. Events of September 11, 2000

At petitioner's trial, Melanie Kretchmar ("Kretchmar") testified that she and her boyfriend, Mark Watson ("Watson") checked into the Holiday Inn on Veterans Memorial highway in Ronkonkoma at approximately 3:30 p.m. on September 11, 2000. (T.(5) at 189-91.)[1] She testified that the bellhop took their luggage to their room, while she carried three gold boxes of liquor and Watson carried a large box containing several bottles of Dom Perignon. (T.(5) at 192.) Kretchmar testified that, later that afternoon, Troy Magee ("Magee"), a heavyset black man with a shaved head, came to Kretchmar and Watson's room. (T.(5) at 192-93.) Magee and Watson grabbed the boxes of liquor and left the room. (T.(5) at 193-94.)

Jonathan Marino ("Marino"), a guest at the Holiday Inn on September 11, 2000, testified that, at approximately eight o'clock that same evening, he exited the hotel to make a phone call. (T.(5) at 321.) While outside the hotel, Marino saw someone matching Magee's description pull another individual from the rear of a station wagon. (T.(5) at 322.) Shocked by what he was seeing, Marino retreated to the hotel. (T.(5) at 322.) After the station wagon left the hotel parking lot, Marino approached what appeared to him to be a person lying on the ground. (T.(5) at 322.) When he reached the individual, he noticed that there was blood on the ground behind the person's head, and a wound slightly above the eye. (T.(5) at 324-25.) After locating the hotel manager, Marino brought him to where he had seen the individual lying on the ground, and then the manager called the police from Marino's cell phone. (T.(5) at 325.)

Police Officer David Verrelli ("Officer Verrelli") of the Suffolk County Police Department testified that he was working patrol that evening when he received a radio call that a male victim with a possible gun shot wound was at the Ronkonkoma Holiday Inn. (T.(5) at 156.) Verrelli responded to the hotel, where he tended to the victim and interviewed witnesses. (T.(5) at 156-57, 325.) Officer Verelli also put out a local notification on the police radio identifying the suspect as a black male. (T.(5) at 159.) The victim, who was later identified as Watson, was taken to Brookhaven Memorial Hospital, where it was determined that he was dead. (T.(5) at 161-62, 326.)

2. Petitioner's Confession

Detective Pasquale Albergo ("Detective Albergo") testified that he began investigating the Watson homicide on the morning of September 12, 2000. (T.(5) at 212.) By the morning of September 14, 2000, Magee had been taken into custody and Detective Albergo was in search of Hudgins and James Stevens ("Stevens"). (T.(5) at 213-14.) They were

---

[1] The trial record is compiled in five volumes: October 4, 2001 (hereinafter "T.(1)"); October 5, 2001 (hereinafter "T.(2)"); October 9, 2001 (hereinafter "T.(3)"); October 10, 2001 (hereinafter "T.(4)"); and October 11, 2001 (hereinafter "T.(5)").

2

stopped together in a car later that evening and taken into custody. (T.(5) at 214-15, 816-18.) Detective Albergo then testified as to the content of Hudgins's statements to him, while in custody. Detective Albergo's testimony regarding the confession is summarized below.

Detective Albergo testified that Hudgins told him that he had been friends with Magee and Stevens for a number of years. (T.(5) at 233.) Several months prior to September 11, 2000, Magee began purchasing alcohol from Watson at a discounted rate. (T.(5) at 233, 250.) Magee introduced Hudgins to Watson, and Hudgins then began purchasing discounted liquor from Watson as well. (T.(5) at 233, 250.)

On the morning of September 11, 2000, Magee visited Hudgins at his home and informed him that Watson had recently stolen liquor from a store and needed to sell it. (T.(5) at 234, 251.) Magee told Hudgins that he had arranged a meeting with Watson for later that afternoon, and that they would need $250 each to make the purchase. (T.(5) at 234.)

At approximately three o'clock that afternoon, Magee returned to Hudgins's house. (T.(5) at 251.) Hudgins told Magee that he was not yet able to get the necessary money. (T.(5) at 251.) Magee told Hudgins he would call Watson to tell him that they needed more time. (T.(5) at 251.) Before Magee left, Hudgins told Magee that he would call him when he got the money. (T.(5) at 251.) Magee called him shortly after leaving to tell him that they had to meet Watson at 7:45 p.m. (T.(5) at 251-52.) Sometime that afternoon, Stevens came to Hudgins's house. (T.(5) at 251.)

Detective Albergo testified that Hudgins told him that he borrowed his girlfriend's Mercury Sable station wagon that evening at 7 p.m. and drove Stevens and himself to Magee's house. (T.(5) at 251-52.) Hudgins and Magee both explained that they had failed to raise the money for the deal. (T.(5) at 252.) Detective Albergo testified that Hudgins told him that the three friends, at that time, agreed to rob Watson of the liquor and to bring Stevens's gun, which Stevens had displayed, together with a bullet, during the conversation. (T.(5) at 236, 252-53.)

The three then drove the Sable station wagon to the Holiday Inn in Ronkonkoma. (T.(5) at 253.) Hudgins and Stevens remained in the vehicle, while Magee went inside the hotel. (T.(5) at 253.) Magee returned to the vehicle after a short while and instructed Hudgins to back his car into a spot on the side of the hotel. (T.(5) at 253.) Magee once again departed and reentered the hotel. (T.(5) at 253.)

Shortly thereafter, Magee returned again, this time accompanied by Watson. (T.(5) at 253.) Both men were holding boxes. (T.(5) at 253.) They both got into the vehicle. (T.(5) at 253.) Watson sat next to Stevens in the back seat and Magee sat in the front passenger seat. (T.(5) at 253.)

Magee instructed Hudgins to pay Watson, but then Magee retracted the order, having realized that the large box was missing a bottle. (T.(5) at 253-54.) After this discovery, Hudgins informed Watson that he was not going to pay for anything and then Stevens displayed the gun. (T.(5) at 254.) Stevens pointed the gun at Watson and told him to exit the vehicle. (T.(5) at 254.) As Hudgins was turned away from the back seat, he heard a loud pop and then he heard abnormal

3

respiratory sounds coming from Watson. Turning his attention to the back seat, Hudgins saw Watson with blood pouring out of his head. (T.(5) at 254.)

Stevens began to immediately apologize for what he had done. (T.(5) at 254.) Magee then exited the vehicle, opened the rear passenger door closest to Watson, and pulled Watson out onto the pavement. (T.(5) at 254.) Before Magee returned to the vehicle, he took whatever money Watson had in his possession. (T.(5) at 254.) When Magee was back in the car, Hudgins drove off. (T.(5) at 254-55.)

Hudgins proceeded to drive home. (T.(5) at 255.) When they arrived at Hudgins's house, Hudgins hinted that Stevens should clean the back seat. (T.(5) at 255.) Soon thereafter, the three friends went to Magee's cousin Chanelle's house for several hours and drank alcohol. (T.(5) at 255-56.) Magee then divided up the money and the liquor they had taken from Watson, giving approximately $500 and three bottles of liquor to each of them. (T.(5) at 255-56.) Chanelle then drove each of them home. (T.(5) at 256.)

Hudgins sold one bottle of wine to his cousin the next day and drank another bottle with his girlfriend. (T.(5) at 256.) A third bottle burst after being placed in the freezer. (T.(5) at 256.)

At the end of Hudgins's interview with Detective Albergo, he gave the detective permission to search his home. (T.(5) at 290-93.)

### 3. Other Evidence

Evidence specialists went to Hudgins's home on the morning of September 15, 2000 and recovered three empty wine bottles. (T.(5) at 299, 379, 384.) They also impounded the Mercury Sable station wagon that was parked in the driveway, which was later found to contain Watson's blood in the back seat. (T.(5) at 482-90, 496-511, 514-23.)

### C. Post-Trial History

Petitioner filed his notice of appeal from the judgment of the County Court of Suffolk County on December 26, 2001. On or about July 1, 2004, petitioner's appellate attorney, Monroe Semble, Esq., of the Suffolk County Legal Aid Society, filed petitioner's direct appeal to the Appellate Division, Second Judicial Department. In his brief, counsel raised two points: (1) that petitioner was denied a fair trial due to the prosecution's prejudicial comments during voir dire and summation; and (2) that petitioner's sentence was excessive. On or about January 14, 2005, petitioner filed a *pro se* supplemental brief in the Appellate Division raising two additional points: (1) that the prosecution denied plaintiff a fair trial by mischaracterizing the evidence – specifically, by (a) telling the jury that, when petitioner told Watson he was not going to pay him, it was petitioner's code for saying "this is a robbery"; (b) erroneously explaining felony murder and the evidence put forward to support such a charge; (c) referring to the taking of Watson's money after he was shot as a "second robbery"; and (d) commenting that "[y]ou don't have to be fair when you're dealing with people that kill"; – and (2) that there was insufficient evidence to support a finding of guilt beyond a reasonable doubt. On July 11, 2005, the Appellate Division, Second Department, issued an order affirming petitioner's conviction. Petitioner's application for leave to appeal to the New York Court of Appeals was denied on October 31, 2005.

4

On or about January 10, 2007, petitioner filed a CPL § 440.10 motion in County Court, Suffolk County for vacatur of his judgment of conviction, arguing (1) ineffective assistance of counsel on the basis that his trial counsel failed to preserve for appellate review the issues of insufficient evidence and prosecutorial misconduct; and (2) prosecutorial misconduct during the summation. On February 5, 2007, this motion was denied on the basis that "[t]he actions or inactions complained of by the defendant were either on the face of the record which could have been raised upon direct appeal and are procedurally barred from this court's review pursuant to CPL § 440.10(2)(c) or involve issues previously determined on the merits upon a direct appeal and are therefore procedurally barred from this court's review under CPL § 440." Petitioner's application for leave to appeal the denial of his § 440.10 motion was denied by the Appellate Division on April 9, 2007.

Petitioner now seeks a writ of habeas corpus on the grounds that: (1) the prosecution denied him a fair trial due to prosecutorial misconduct during summation (the "prosecutorial misconduct claim"); (2) there was insufficient evidence presented during trial to support petitioner's conviction (the "insufficient evidence claim"); (3) his trial counsel was ineffective because he failed to preserve for appellate review the issue of prosecutorial misconduct during summation (the "ineffective assistance claim"); and (4) excessive sentence (the "excessive sentence claim").

## II. STANDARD OF REVIEW

To determine whether a petitioner is entitled to a writ of habeas corpus, a federal court must apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, which provides, in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2554. "Clearly established Federal law" is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Green v. Travis*, 414 F.3d 288, 296 (2d Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially

indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Earley v. Murray*, 451 F.3d 71, 74 (2d Cir. 2006). A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Williams*, 529 U.S. at 413; *see also Earley*, 451 F.3d at 74.

In particular, AEDPA establishes a deferential standard of review: "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams*, 529 U.S. at 411). The Second Circuit added that, while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).

### III. Discussion

As discussed below, the petitioner's prosecutorial misconduct and ineffective assistance of counsel claims are procedurally barred. In any event, in an abundance of caution, the Court has examined all of petitioner's claims on the merits and concludes that all of his claims fail on the merits for the reasons discussed *infra*.

### A. Procedural Default

A petitioner's federal claims may be procedurally barred from habeas corpus review if they were decided at the state level on "adequate and independent" procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 729-33 (1991). The procedural rule at issue is adequate if it is "firmly established and regularly followed by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999). To be independent, the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case," *Harris v. Reed*, 489 U.S. 255, 261 (1989), by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar." *Id*. at 263 (internal quotations omitted). Generally, the Second Circuit has deferred to state findings of procedural default as long as they are supported by a "fair and substantial basis" in state law. *Garcia*, 188 F.3d at 78 (citing *Arce v. Smith*, 889 F.2d 1271, 1273 (2d Cir. 1989)). The purpose of the procedural bar rule is to maintain the delicate balance of federalism by retaining a state's rights to enforce its laws and maintain its judicial procedures as it sees fit. *Coleman*, 501 U.S. at 730-33. Thus, a federal habeas court may not review a procedurally barred claim on the merits unless the petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Id.* at 750. A fundamental miscarriage of justice only occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

1. Prosecutorial Misconduct Claim

On direct appeal, the Appellate Division explicitly determined, relying on state law, that petitioner's claim of prosecutorial misconduct was unpreserved for appellate review. *People v. Hudgins*, 20 A.D.3d 489, 490 (N.Y. App. Div. 2005) ("The defendant failed to preserve for appellate review his contention that he was deprived of a fair trial by prosecutorial misconduct during the People's summation."). The Appellate Division found that "[t]he defendant did not object to some of the remarks at issue, made general one-word objections to others, and did not request curative instructions when his objections were sustained." *Id.* at 489. Under New York law, "a defendant must alert the court of any prosecutorial misconduct during summation . . . at the time such misconduct takes place in order to preserve that claim for appellate review." *Rodriguez v. Bennett*, No. 00 Civ. 401 (MBM), 2006 WL 2128782, at *3 (S.D.N.Y. July 25, 2006) (citing *People v. Copeland*, 816 N.Y.S.2d 264, 265 (N.Y. App. Div. 2006) and *People v. Garner*, 27 A.D.3d 764, 764 (N.Y. App. Div. 2006)); *see also* N.Y. C.P.L. § 470.05 (preserving for review only those questions of law as to which "a protest . . . was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same"). Petitioner does not dispute that he did not preserve his prosecutorial misconduct claim at trial. In fact, it is upon this basis that petitioner alleges ineffective assistance of counsel.[2]

The Second Circuit has repeatedly recognized the validity of § 470.05, noting that "[i]f a state appellate court refuses to review the merits of a criminal defendant's claim of constitutional error because of his failure to comply with . . . a 'contemporaneous objection' rule, a federal court generally may not consider the merits of the constitutional claim on habeas corpus review." *Peterson v. Scully*, 896 F.2d 661, 663 (2d Cir. 1990) (internal citation omitted). Furthermore, the Second Circuit has "observed and deferred to New York's consistent application of its contemporaneous objection rules." *Garcia*, 188 F.3d at 79; *see also Bossett v. Walker*, 41 F.3d 825, 829 n.2 (2d Cir. 1994) (respecting state court's application of § 470.05(2) as an adequate bar to federal habeas review); *Fernandez v. Leonardo*, 931 F.2d 214, 216 (2d Cir. 1991) (noting that failure to make objection at trial constitutes adequate procedural default under § 470.05(2)).

Therefore, the Court finds that petitioner's prosecutorial misconduct claim is procedurally barred from federal habeas review. The petitioner has not demonstrated cause for the default – as explained *infra*, plaintiff's ineffective assistance claim fails on the merits and, therefore, cannot provide the basis for excusing petitioner's default. Moreover, there was overwhelming evidence put forth during petitioner's trial to support the jury's findings. Therefore, the Court does not find that the alleged errors prejudiced petitioner by working to his "actual and substantial disadvantage, infecting his entire

---

[2] Although it is true that, in some circumstances, a trial counsel's ineffectiveness in failing to preserve a claim for review will constitute grounds to excuse a procedural default, to rise to this level, "the assistance must have been so ineffective as to violate the Federal Constitution." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). As discussed *infra*, counsel's alleged ineffectiveness does not constitute a constitutional violation.

7

trial with error of constitutional dimensions."[3] *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (quotations omitted). Nor has petitioner demonstrated that failure to consider this claim would result in a "fundamental miscarriage of justice."[4] In any event, in an abundance of caution, the Court has analyzed the merits of this claim and determined, even assuming *arguendo* that there were no procedural bar, petitioner's claim fails on the merits, as discussed *infra*.

### 2. Ineffective Assistance Claim

Petitioner raised his ineffective assistance of counsel claim in his CPL 440.10 motion to vacate his judgment of conviction. The County Court, Suffolk County found that "[t]he actions or inactions complained of by the defendant were either all on the face of the record which could have been raised upon direct appeal and are procedurally barred from this court's review pursuant to CPL § 440.10(2)(c) or involve issues previously determined on the merits upon a direct appeal and are therefore procedurally barred from this court's review under CPL 440.20(a)." As petitioner did not raise his ineffective assistance claim on direct appeal, petitioner was represented by new counsel on appeal, and the basis for the ineffective assistance claim is all evident on the record, the County Court clearly denied this claim on the basis that it was procedurally barred – an "independent and adequate state ground" – and, therefore, such claim is now procedurally barred from habeas review. *Chang v. United States*, 250 F.3d 79, 84 n.1 (2d Cir. 2001) ("A defendant is generally permitted to raise an ineffective assistance claim in a collateral attack, even when the claim was not raised on direct appeal, unless new counsel represented the defendant on direct appeal and the claim is based solely on the record developed at trial.") (internal quotation marks and citations omitted). In any event, even if such claim were not procedurally barred, it would fail on the merits for the reasons discussed *infra*.

### B. Merits

The Court now turns to the claims that are not procedurally barred – petitioner's claims that there was insufficient evidence presented to support a finding of guilt beyond a reasonable doubt and that his sentence was excessive. For the reasons discussed *infra*, the Court finds these claims to be without merit. In an abundance of caution, the Court also looks to the merits of petitioner's other claims and finds, for the reasons set forth below, that these claims are also without merit.

### 1. Insufficient Evidence Claim

"The Due Process Clause of the Fourteenth Amendment prohibits conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which [the defendant] is charged.' Consequently, a state prisoner 'is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.' Hence, we must consider whether, as a matter of federal law, there was sufficient evidence for a jury to find that the prosecution proved the substantive elements of the crime as defined by state law. In evaluating whether the evidence is sufficient, we must 'view[] the evidence in the light most favorable to the prosecution.'" *Einaugler v. Supreme Court*,

---

[3] The lack of prejudice is explored further in discussion of the merits *infra*.

[4] This issue is also more thoroughly addressed in discussion of the merits, as outlined *infra*.

8

109 F.3d 836, 839-40 (2d Cir. 1997) (internal citations omitted). "A state criminal conviction will be upheld if, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Garrett v. Smith*, No. 05-cv-3374 (JFB), 2006 WL 2265094, at *5 (E.D.N.Y. Aug. 8, 2006). The reviewing court "must defer to the jury's 'assessments of the weight of the evidence and the credibility of the witnesses.'" *Leveille v. Ercole*, 2006 WL 3257233, at *4 (E.D.N.Y. 2006) (citing *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996)). Even when "faced with a record of historical facts that supports conflicting inferences [a court] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994).

Petitioner claims that there was insufficient evidence put forth to support a finding of guilt beyond a reasonable doubt on the charges of robbery in the first degree and murder in the second degree. Specifically, petitioner contends that "the only evidence presented by prosecutor, that was of any merit to defendants [sic] participation in charged crimes, was his statement, that Prosecutor falsely classified as a confession, but was in all reality an admission. . . . [and p]etitioner never confessed to any action beyond mere preparation of the crime of robbery." (Petition at A-3.) Petitioner clearly has not met his "very heavy burden" on this claim. *See Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993). It is clear that the prosecution put forth sufficient evidence from which a jury could reasonably find, and did find, that petitioner was guilty of robbery in the first degree and felony murder beyond a reasonable doubt. At trial, the prosecution put forth the petitioner's own statement, admitting that he assisted in planning and conducting the forced robbery of Mark Watson, with the use of Stevens's loaded gun. (T.(5) at 236, 252.) This evidence, combined with other evidence at trial, was sufficient to justify the jury's conclusion that "petitioner and his companion[s] had indeed killed [Watson] during the course of robbing him." *Smith v. Keane*, 1995 WL 87330, at *1 (E.D.N.Y. 1995); *see also Howard v. Walker*, 406 F.3d 114, 125 (2d Cir. 2005) ("In New York State, an individual may be guilty of murder in the second degree where acting either alone or with one or more other persons, he commits or attempts to commit [an enumerated felony], and, in the course of and in furtherance of such crime or of immediate flight therefrom, he, or another participant, if there be any, *causes* the death of a person other than one of the participants.") (citing N.Y. Penal Law § 125.25(3) (2004)) (internal quotation marks omitted) (emphasis in original). That petitioner appears not to understand that his admission, in combination with other evidence, satisfies the requirements of a felony murder charge does not make his claim meritorious. In addition to petitioner's own admissions, the prosecution put forward overwhelming evidence – including testimony from two witnesses to the events of September 11, 2000, a medical examiner, a fingerprint specialist, arresting officers, as well as evidence of recovering the proceeds of the robbery from petitioner's home and discovering the victim's blood in the car driven by petitioner – to corroborate petitioner's admissions as required by CPL § 60.50.[5]

---

[5] Petitioner's argument that his post-arrest statement was an "admission" and not a

9

On direct appeal, the Appellate Division held that "[v]iewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish the defendant's guilt of murder in the second degree and robbery in the first degree beyond a reasonable doubt." *Hudgins*, 20 A.D.3d at 489 (internal citation omitted). This Court finds no basis for finding otherwise. The prosecution put forth overwhelming evidence of petitioner's involvement in the armed robbery and that such robbery led to Watson's murder. Accordingly, petitioner's insufficient evidence claim fails on the merits, and his request for habeas relief on that ground is denied.

2. Excessive Sentence Claim

Petitioner also claims that his two concurrent sentences are harsh and excessive. As set forth below, the Court disagrees and finds no basis for habeas relief in connection with the petitioner's sentence.

Petitioner raised his excessive sentence claim on direct appeal on the grounds that because he had no prior criminal record and "should not be punished as harshly as Magee or Stevens," his "sentence should be reduced to a 15-life term, the minimum permitted by law for felony murder." (Appellant's Brief on Appeal, at 23.) The claim appears to have been raised entirely on state law grounds, relying on the state legislature's grant to the Appellate Division of "the discretionary power to reduce or modify an unduly harsh or excessive sentence in the interest of justice."

---

confession has no legal significance. Petitioner's statements as to his involvement in the robbery and felony murder for which he was convicted were properly admitted and clearly supported a finding of guilt.

(Appellant's Brief on Appeal at 21 (citing C.P.L. §§ 470.15(2)(c) and 470.20(6)).)

As a threshold matter, to the extent that petitioner relies on state law as a grounds for an excessive sentence claim, such claim is not cognizable on habeas review. *See, e.g., Wilson v. Ercole*, No. 06-cv-553 (DLI), 2009 U.S. Dist. LEXIS 23447, at *30-*31 (E.D.N.Y. Mar. 23, 2009) ("On his direct appeal, petitioner . . . did not contend that this sentence violated his constitutional rights, but instead urged the Appellate Division to reduce the sentence under C.P.L. § 470.15(6)(b), which gives the state court broad plenary power to modify a sentence that is unduly harsh or severe, though legal. The Appellate Division declined, stating that the 'sentence imposed was not excessive.' Petitioner now re-asserts this identical claim. Given that this claim rests exclusively on state law, the court may not review it under 28 U.S.C. § 2254(d).") (internal citations omitted).

In any event, to the extent petitioner also attempts to raise a violation of federal law in connection with sentencing, that claim also has no merit. For the purpose of habeas review, "[n]o federal constitutional issue is presented where, as here, the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992); *see also Santiago v. Riley*, 92-cv-2302 (DRH), 1993 U.S. Dist. LEXIS 6990, at *11-*12 (E.D.N.Y. May 14, 1993) ("Where the sentence imposed by a state trial judge is within the statutorily prescribed range, the constitution is not implicated and there is no federal question for habeas corpus review.") (citation omitted); *Underwood v. Kelly*, 692 F. Supp. 146, 152 (E.D.N.Y. 1988), *aff'd*, 875 F.2d 857 (2d Cir. 1989). In this case, petitioner was sentenced to an indeterminate term of twenty years to life imprisonment for

the top count of murder in the second degree. Such a sentence is clearly within the range prescribed by New York law and, therefore, raises no constitutional concerns. *See Valentine v. Lord*, 03-CV-4834, 2006 U.S. Dist. LEXIS 48625, 2006 WL 1997708, at *4 (S.D.N.Y. July 18, 2006) ("[T]he statutory minimum for felony murder in New York is 15 years and the statutory maximum is life imprisonment.") (citations omitted); *Hudgins*, 20 A.D.3d at 490 ("[t]he sentence imposed was not excessive"). Petitioner's arguments that the sentence is greater than that offered during plea negotiation and that the sentence is disproportionate to his co-defendants' sentences are not cognizable grounds for relief. *See Walker v. Walker*, 259 F. Supp. 2d 221, 226 (E.D.N.Y. 2003) ("[T]he mere fact that the sentence imposed following trial is greater than the offer made during plea negotiations, does not indicate that a petitioner has been punished for exercising his right to proceed to trial."); *Capita v. Mazzuca*, 2007 WL 169551, at *5 (E.D.N.Y. 2007) ("[T]he contention that his sentence was disproportionate to his co-defendant's [is not] a cognizable grounds for relief.").

In sum, the Court finds that petitioner's sentence was not excessive and, therefore, the petition for habeas corpus on this ground is denied.

### 3. Prosecutorial Misconduct Claim

Petitioner contends that "throughout Petitioner's trial summation, Prosecutor purposely mischaracterized the evidence and facts of the case in order to support her argument." (Petition at A-1.) Specifically, petitioner points to (1) the prosecution's reference to "two robberies" of Watson by petitioner and his co-defendants – one of the liquor before the shooting and one of the money taken from Watson after the shooting – while petitioner was only charged with one robbery; (2) the prosecution's reference to the September 11, 2001 World Trade Center attacks and the prosecution's remarks that the detectives involved in petitioner's case were heroes for getting petitioner off the street; and (3) the prosecution's remark that "you don't have to be fair when dealing with people that kill." (*Id.*) Although this claim is procedurally barred for the reasons set forth *supra*, the Court, in an abundance of caution, will address it on the merits. As set forth below, the Court finds that there is no basis to conclude that any of the allegedly improper remarks by the prosecutor in the closing statement warrant habeas relief, especially when considered in the context of the entire trial and in response to counsel for petitioner's closing argument.

"A criminal conviction 'is not to be lightly overturned on the basis of a prosecutor's comments standing alone' in an otherwise fair proceeding." *Gonzalez v. Sullivan*, 934 F.2d 419, 424 (2d Cir. 1991) (quoting *United States v. Young*, 470 U.S. 1, 11 (1985)). "Remarks of the prosecutor in summation do not amount to a denial of due process unless they constitute 'egregious misconduct.'" *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974)). For a claim of prosecutorial misconduct to suffice to establish a claim of constitutional error, "it is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (citation and quotation marks omitted). "[N]ot every trial error or infirmity which might call for application of supervisory powers correspondingly constitutes a 'failure to observe that fundamental fairness essential to the very concept of justice.'" *Donnelly*,

11

416 U.S. at 642 (quoting *Lisenba v. California*, 314 U.S. 219, 236 (1941)). The Court must then review such comments by a prosecutor narrowly to determine whether they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181 (quoting *Donnelly*, 416 U.S. at 642).

To overcome this burden, petitioner must show that he "'suffered actual prejudice because the prosecutor's comments during [testimony and/or] summation had a substantial and injurious effect or influence in determining the jury's verdict.'" *Bentley v. Scully*, 41 F.3d 818, 824 (2d Cir. 1994). Factors considered in determining such prejudice include "(1) the severity of the prosecutor's conduct; (2) what steps, if any, the trial court may have taken to remedy any prejudice; and (3) whether the conviction was certain absent the prejudicial conduct." *Id.*; *accord United States v. Thomas*, 377 F.3d 232, 245 (2d Cir. 2004). "In addition, in determining whether a prosecutor's conduct was unconstitutional, a court 'must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's [remarks] . . . . If the prosecutor's remarks were 'invited,' and did no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction.'" *Everett v. Fischer*, No. 00 Civ. 6300, 2002 WL 1447487, at *2 (E.D.N.Y. July 3, 2002) (quoting *United States v. Young*, 470 U.S. 1, 13-14 (1985) (alterations in original)).

As discussed below, the Court agrees with the Appellate Division that this claim is without merit "because, to the extent that the remarks did not constitute either fair comment on the evidence or permissive rhetorical responses to the defense summation, any error was harmless in light of the overwhelming evidence of the defendant's guilt." *Hudgins*, 20 A.D.3d at 490 (internal citations omitted).

### a. Second Robbery

The Court finds that the prosecution's reference to a "second robbery" was not prejudicial because the comments were "incidental and did not change the theory of the prosecution's case," *People v. Lewis*, 122 A.D.2d 426, 428 (N.Y. App. Div. 1986), and the jury charge clearly and accurately instructed the jurors regarding counsels' arguments during summation and about the charges against the petitioner, namely that there was only one robbery charge pending against petitioner. Therefore, there is no basis for finding that such comment would have had an injurious effect on the jury's verdict. Moreover, in the light of the overwhelming evidence of petitioner's guilt, this comment was not prejudicial. As discussed *supra*, there was substantial evidence presented that petitioner participated in planning and carrying out the robbery for which he was charged. In short, there is no reason to believe that the prosecution's reference to a second robbery had any prejudicial effect.

### b. Reference to September 11, 2001

The Court also finds that the prosecution's comments about September 11, 2001 were not prejudicial, but rather were in response to defense counsel's comments that Detective Albergo fabricated his testimony about petitioner's confession. In this context, the prosecution's statements were clearly "within the range of rhetorical comment permissible during closing argument and did not deprive petitioner of a fair trial." *Martin v. Scully*, 748 F. Supp. 159, 167 (S.D.N.Y. 1990). Moreover, even if the comment was better left unsaid, it did not render the trial so unfair as

to deprive petitioner of his due process rights. In particular, in light of the overwhelming evidence of petitioner's guilt, such a comment cannot be found to have actually prejudiced petitioner.

### c. Fairness Comment

Finally, the Court concludes that Petitioner has taken the prosecution's comment that "you don't have to be fair when you're dealing with people that kill" out of context in an attempt to raise the appearance of prejudice, even though no such prejudice existed. In proper context, this comment was a response to defense counsel's insinuation that Detective Albergo had fabricated petitioner's confessions and was an attempt to explain that the Detective had no obligation to explain felony murder to petitioner during his confession. The comment at issue preceded the following statement by the prosecutor: "You don't have to say, [']Hey listen, you know, you're not only confessing to a robbery, you're confessing to a murder.['] They don't have to tell him that. They don't have to tell him that at all. Whatever he confesses to that's the crime he's charged with, they don't have to tell him that at all." (T.(5) at 939.) Therefore, the comment could not be understood as a statement to the jury that they did not have to render a fair and impartial verdict. Instead, the statement was in response to defense counsel's closing and was clearly "within the range of rhetorical comment permissible during closing argument and did not deprive petitioner of a fair trial." *Martin v. Scully*, 748 F. Supp. 159, 167 (S.D.N.Y. 1990).

In sum, with respect to all of the statements identified by petitioner, either individually or collectively, the Court concludes that petitioner suffered no actual prejudice. The severity of the prosecutor's comments in this case was *de minimis*, in both quantity and significance. The statements were limited and, in several instances, were direct responses to defense counsel's arguments. In addition, any potential prejudice was neutralized by the trial court's instruction to the jury prior to opening statements that "[s]tatements, arguments and questions by the attorneys are not evidence" (T.(5) at 126) and the instruction after the summation that "[t]he summations of counsel are, of course, not evidence" (T.(5) at 952). Further, the prosecution put forth overwhelming evidence of petitioner's guilt, and, therefore, there is no evidence of actual prejudice to the petitioner. *See, e.g.*, *Pilgrim v. Keane*, 97-cv-1516 (SJ), 2004 U.S. Dist. LEXIS 27480, at *7-*8 (E.D.N.Y. Aug. 9, 2004) ("Even if some of the prosecutor's . . . statements were improper, . . . they were not so egregious as to cause 'substantial prejudice' that denied Petitioner his right to a fair trial. The jury heard ample evidence placing Petitioner at the scene of the crime and directly linking him to the murder. Accordingly, this Court finds that Petitioner has not shown that he was denied a fair trial, since 'it can fairly be said that [his] conviction[] [was] the result of the jury's assessment of the evidence, not the result of improper argument by the prosecutor.'") (citing *United States v. Nersesian*, 824 F.2d 1294, 1328 (2d Cir. 1987)). Therefore, any error did not rise to the level of a constitutional violation. Accordingly, petitioner's request for habeas relief based on alleged prosecutorial misconduct is denied.

### 4. Ineffective Assistance of Counsel Claim

Petitioner further contends that he received ineffective assistance of counsel because counsel failed to preserve his

prosecutorial misconduct claim by not making the appropriate objections during the prosecutor's summations. For reasons set forth below, the Court finds that there is no basis to conclude that the petitioner's counsel was constitutionally defective, or that there was any prejudice to petitioner.

Under the standard promulgated by *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), a petitioner is required to demonstrate two elements in order to state a successful claim for ineffective assistance of counsel: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694.

The first prong requires a showing that counsel's performance was deficient. However, constitutionally effective counsel embraces a "wide range of professionally competent assistance," and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). The performance inquiry examines the reasonableness of trial counsel's actions under all circumstances, keeping in mind that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. In assessing performance, a court must apply a "heavy measure of deference to counsel's judgments." *Greiner*, 417 F.3d at 319 (quoting *Strickland*, 466 U.S. at 691). "A lawyer's decision not to pursue a defense does not constitute deficient performance if, as is typically the case, the lawyer has a reasonable justification for the decision," *DeLuca v. Lord*, 77 F.3d 578, 588 n.3 (2d Cir. 1996), and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 588 (citing *Strickland*, 466 U.S. at 690). Moreover, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690-91.

The second prong focuses on prejudice to the petitioner. The petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, "reasonable probability" means that the errors were of a magnitude such that they "undermine[] confidence in the outcome." *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). "The question to be asked in assessing the prejudice from counsel's errors . . . is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Henry v. Poole*, 409 F.3d 48, 63-64 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 695).

This court proceeds to examine each prong in turn, keeping in mind that the habeas petitioner bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004). As set forth below, petitioner's claim fails to satisfy either element.

First, petitioner has not satisfied the first prong by showing that counsel's representation fell below an objective standard

of reasonableness. In particular, there are strategic reasons an attorney might "forego objections: the conclusion that additional objections might have annoyed the judge or jury; the possibility that the prosecutor, given enough rope, would alienate the jury; the desire not to call attention to unfavorable evidence or to highlight unfavorable inferences." *Taylor*, 2006 WL 416372, at *5. During the prosecution's summation, defense counsel did make objections in several instances, (T.(5) at 901-02, 904), which indicates that the choice not to object at other times "was driven by strategy." *Nova v. Ercole*, 2007 WL 1280635 at *8. Moreover, as many of the comments were in response to defense counsel's summation, a failure to object does not indicate incompetence. *See Cuevas v. Henderson*, 801 F.2d 586, 592 (2d Cir. 1986).

In any event, even assuming *arguendo* that petitioner was able to show that counsel's performance was deficient, petitioner cannot show that he was prejudiced by such deficiency. As discussed *supra*, the prosecution's statements on summation did not prejudice petitioner or deprive him of a fair trial. Moreover, the evidence of petitioner's guilt was overwhelming and, therefore, there is no reason to believe that absent the alleged deficiency the jury would have reached a different conclusion. *See Butts v. Walker*, 2003 WL 22670921, at *8. Accordingly, petitioner cannot satisfy the second prong of *Strickland*.

In sum, the ineffective assistance of counsel claim fails on the merits and, thus, does not provide a basis for habeas relief.

IV. CONCLUSION

For the foregoing reasons, petitioner has demonstrated no basis for relief under 28 U.S.C. § 2254. Petitioner has failed to point to any state court ruling that was contrary to, or an unreasonable application of, clearly established federal law, or that resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. The Court has reviewed all of petitioner's claims and finds them to be without merit.

Accordingly, the instant habeas petition is denied. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2).

The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____

JOSEPH F. BIANCO

United States District Judge

Dated:    June 18, 2009
              Central Islip, New York
                  * * *

Petitioner appears *pro se*. The attorney for the respondent is Marion M. Tang, Esq., Suffolk County District Attorney's Office, 200 Center Drive, Riverhead, New York 11501.